## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

NIXON KEAGO,

      *Plaintiff*,

      vs.

UNITED STATES DISCIPLINARY
BARRACKS, Ft. Leavenworth,

      *Defendant*.

Case No. 21-3131-EFM

## MEMORANDUM AND ORDER

Plaintiff Nixon Keago alleges he has been denied medical care and unfairly disciplined while under detention at the Defendant United States Disciplinary Barracks at Fort Leavenworth, Kansas.  Defendant has moved for summary judgment, arguing that Plaintiff has not been disciplined, and is receiving medical care.  (Doc. 13).  The Court grants summary judgment to Defendant.

### I.      Factual and Procedural Background

On May 26, 2021, Plaintiff filed a pro se *Bivens*-type[1] civil rights action addressing his treatment while an inmate of the Disciplinary Barracks.  According to Plaintiff, he is assigned to a 3:00 a.m. work detail at the Barracks.  Plaintiff alleges he has clinical insomnia, and that his requests to be placed on a different work detail have been denied. He also alleges that the

---

[1] *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

medication he is receiving is not helping with his insomnia, and, as a result, he injured his thumb at work.

Plaintiff claims that he is being medically neglected, stating:

[T]he new pills they [Barracks medical staff] prescribed were not working in December 2020. They ignored my problem up until March 2021. This worsened by clinical insomnia and when they finally saw me in March, they didn't change my prescription, they just scheduled a follow up. Until now I'm still on the pills that don't work. By doing this, they denied me my right to timely medical help and due to this 3 month wait, it worsened my clinical insomnia.

"Instead of treating me," he alleges, "they wrote me up for staff harassment when all I was asking for is to be seen. They denied me medical attention."  Plaintiff named the Barracks as the sole defendant, and sought $50,000 in damages.

On July 20, 2021, the Court found in its Memorandum and Order to Show Cause (Doc. 4) that in *Feres v. United States*, 340 U.S. 135 (1950), the United States Supreme Court ruled that the Federal Torts Claims Act did not operate as a waiver of sovereign immunity in an action brought by active-duty military personnel.  Moreover, it recognized that the federal government "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service"  Accordingly, the Court ordered Plaintiff to show good cause why his action should not be dismissed due to the identified deficiencies.

In his Response, Plaintiff recognized the *Feres* doctrine and conceded that his injury claims should be dismissed.  However, he stated that "the deliberate neglect and refusal to provide proper medical attention cannot be dismissed," and argued that he is being denied proper medical care and is receiving disciplinary reports when he attempts to seek medical care.

On September 30, 2021, the Court found that Plaintiff's injury occurred incident to service and dismissed his injury and damages claims. (Doc. 6). The Court construed Plaintiff's claims of discipline and inadequate medical care as a request for injunctive relief, and directed Defendant to file an answer or otherwise respond. Defendant filed its summary judgment motion on January 19, 2022, relying on Plaintiff's inmate records.

A thorough search of all inmate records maintained for Plaintiff has not produced any disciplinary reports (DRs) for harassing staff or for requesting medical appointments. Plaintiff had received one disciplinary report and formal statement of charges, which was for oversleeping and missing his escort to work detail.

Dr. Joaquin Llado-Frazer is the Medical Authority for the Barracks, where he supervises all medical providers, including Major David Walker, the licensed Physician Assistant in charge of the Barracks Clinic. By affidavit, Dr. Llado-Frazer has identified ten times Plaintiff was seen by a medical provider between December 2020 and June 2021. After each visit, Plaintiff's medications were reviewed, and sometimes adjusted.

At his scheduled four week follow-up on February 23, 2021, the provider noted poor sleep hygiene with daytime napping, which is strongly discouraged as it hinders sleep efforts in the evening for most patients with insomnia. His first-line agent of Doxepin and Fluoxetine for adjustment mood disorder was discontinued in favor of Amitriptyline, a combined efficacy tricyclic antidepressant. Staff planned to increase the original 10mg dose over the following weeks.

Plaintiff signed·up for sick call on March 5, 2021, and was again seen for sleep issues. At this time he was also given an Epworth Sleepiness Scale assessment for him to complete. His Amitriptyline was renewed on March 15, 2021 at an increased does of 20mg.

On March 18, 2021, he requested a refill of his discontinued Doxepin and Fluoxetine. Major Walker referred Plaintiff to the February 23, 2021 treatment plan that switched the prescribed medication to Amitriptyline over the previous two agents.

In a follow-up visit on March 22, 2021, Plaintiff reported continued symptoms of delayed sleep onset, daytime somnolence, and continued napping.  He was enrolled in and started the Cognitive Behavior Therapy for Insomnia course offered by the Barracks' Mental Health Division of Department of Treatment Programs.  His dose of Amitriptyline was increased to 25mg.  If this was ineffective, the medical staff planned to taper up to 50mg over the following few weeks.  Plaintiff was also seen for adjustment disorder with anxiety and skin irritation with acne breakouts, reportedly due to personal grooming.

Plaintiff was again seen by Major Walker on April 6 and April 22, 2021, who explained at each visit that grooming products used to achieve aesthetic hair appearance are not a medical necessity, and a medical exception to policy would not be authorized.  Hygiene with soap, shampoo, and water were the only medically required grooming recommendations.

On May 5, 2021, Major Walker renewed the Amitriptyline medication at the 50mg dose and told Plaintiff that it would be time to wean the medication in June to assess his post-adjustment period to incarcerated life.  Clinically, medications started for adjustment diagnosis should be withdrawn at six months or later from the initial stressor to assess recovery from major life changes.  At that time, Plaintiff had been on a medication for his condition for over eight months. Plaintiff completed the Cognitive Behavior Therapy for Insomnia course on May 24, 2021.

On June 2, 2021, medical staff decided not to wean Plaintiff off the Amitriptyline 50mg, and renewed the dosage.

- 4 -

On September 30, 201, Plaintiff turned in his requested Epworth Sleepiness Scale. The score from this survey indicated mild sleepiness not requiring referral to a sleep specialist. He was scheduled for a follow-up with Dr. Llado-Frazier in September 2021, but this was rescheduled to mid-November because Dr. Llado-Frazier was temporarily assigned to other duty. Plaintiff's Amitriptyline at 50mg was continued and he was found to have been compliant with this dosage.

Plaintiff has not signed up for sick call since May 5, 2021 and at the time of Defendant's motion had an appointment pending with Dr. Llado-Frazier to discuss insomnia and medication adjustments.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears the initial burden of proof, though "a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[4] Such a movant "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[5] The nonmovant must then bring

---

[2] Fed. R. Civ. P. 56(a).

[3] *Sotunde v. Safeway, Inc*., 716 F. App'x 758, 761 (10th Cir. 2017) (emphasis omitted).

[4] *Thom v. Bristol-Myers Squibb Co*., 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[5] *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325)..

forth "specific facts showing a genuine issue for trial."[6]   These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[7]   Conclusory allegations are not sufficient to create a dispute as to an issue of material fact.[8]   The court views all evidence and draws "reasonable inferences therefrom in the light most favorable to the non-moving party."[9]

Plaintiff is proceeding pro se.  The Court therefore reviews his pleadings, including those related to Defendants' motion, "liberally and holds them to a less stringent standard than those drafted by attorneys."[10]   The Court, however, cannot assume the role of advocate for the pro se litigant.[11]   Likewise, Plaintiff's pro se status does not relieve him from the obligation to comply with procedural rules, including the Federal Rules of Civil Procedure.[12]

### III.   Analysis

"An inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights."[13]   "However, claims of retaliation fail if the alleged retaliatory conduct

---

[6] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  *See* D. Kan. Rule 7.4.

[7] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670-71).

[8] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (quoting *N. Tex. Prod. Credit Ass'n v. McCurtain Cty. Nat'l Bank*, 222 F.3d 800, 806 (10th Cir. 2000)).

[10] *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (quotations omitted).

[11] *Hall*, 935 F.2d at 1110 ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

[12] *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n. 3 (10th Cir. 2002).

[13] *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (citation omitted).

violations were issued for the actual violation of a prison rule."[14]   Further, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."[15]   "Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection."[16]

Defendant contends that summary judgment is appropriate because Plaintiff has presented no substantial evidence of any actual discipline for seeking medical attention.   To the contrary, according to Defendant, Plaintiff's inmate file shows he has not been disciplined for asking for medical care.

Plaintiff argues in opposition to Defendant's motion that he has in fact been injured by Defendant's actions.   In his August 11, 2021 response to the order to show cause, Plaintiff claimed that he had been subjected to multiple disciplinary reports.   Now, in his response to the summary judgment motion, Plaintiff claims only that he received a disciplinary report for disciplinary report for "staff harassment," and that after May of 2020, he has "yet to see a medical provider."   However, these claims are belied by the evidence cited by Plaintiff himself.

Plaintiff's Response centers on an Inmate Request Slip, MCC Form 510 issued on February 12, 2021.   As noted on the form itself, a Form 510 report is designed for an inmate "to initiate an interview or communication with Military Correctional Complex staff" in response to some communication from Barracks staff.   The written portion of the form states, "[y]ou are

---

[14] *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018).

[15] *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citation omitted), *overruled on other grounds by Swierkiewicz v. Soreman N.A.*, 534 U.S. 506 (2002)n

[16] *Id.* at 493.

hereby notified you are under investigation for the following offenses: STAFF HARASSMENT." By its terms, the Report merely states that a investigation was underway; it did not indicate that discipline for harassment was imminent or even likely. To the contrary, the form submitted by Plaintiff in fact includes the notation: "DR is deleted."

Further, in his handwritten response to the February 12 notice, Plaintiff wrote: "I only have *one* DR on file for oversleeping due to my sleep issues I'm being treated for and it was filed unfavorable. Any other time I was written up, it was deleted." (Emphasis in original). In Form 510 reports filed on June 8 and June 14 of 2021, Plaintiff again also wrote, "I have only one DR on file"—the one issued for oversleeping. Plaintiff has failed to offer evidence which would contradict the evidence submitted by Defendant, based upon a review of his inmate file, that he has not been disciplined for either staff harassment or for requesting medical appointments.

Summary judgment is also appropriate as to Plaintiff's claim of a denial of medical care. Prison officials violate a prisoner's right to medical care "when they act deliberately and indifferently to serious medical needs of prisoners in their custody."[17] "Deliberate indifference has both an objective and subjective component."[18] Objective indifference arises when authorities ignore a sufficiently serious condition, which exists "if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"[19] "The objective component must be

---

[17] *Goss v. Bd. of Cty. Comm'rs of Creek Cty.*, 645 F. App'x 785, 793 (10th Cir. 2016) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

[18] *Hunt*, 199 F.3d at 1224 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

[19] *Al-Turki v. Robinson*, 762 F.3d 1188, 1192-93 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

evaluated by the actual harm suffered, not by symptoms perceived by the defendant."[20]  "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing . . . ."[21]

Subjective indifference arises when the responsible authority "knows of and disregards an excessive risk to inmate health and safety."[22]  A prison physician is "free to exercise his or her independent professional judgment[,] and an inmate is not entitled to any particular course of treatment."[23]  This standard requires a prisoner to establish a "deliberate refusal to provide medical attention, as opposed to a particular course of treatment."[24]  Deliberate indifference is not established by a mere delay in treatment unless the delay causes further "substantial harm," such as a "lifelong handicap, permanent loss, or considerable pain."[25]

Plaintiff's assertion that he has not received medical care after the Form 510 notice is contradicted both by the evidence submitted by Defendant and by Plaintiff's own statements. The evidence from the medical record indicates that Plaintiff's medication was adjusted on December 23, 2020; January 22, 2021; February 23, 2021; March 15, 2021; March 22, 2021; and May 5, 2021.  Plaintiff himself states that he saw Major Walker twice – in February, and again four weeks later.  In his response to the February 11 report for missing the work detail, Plaintiff

[20] *Scriven v. Corby*, 2021 WL 2222682, at *11 (D. Kan. 2021) (citing *Mata v. Saiz*, 427 F.3d 745, 8753 (10th Cir. 2005).

[21] *Mata*, 427 F.3d at 751 (citing *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)).

[22] *Farmer*, 511 U.S. at 837.

[23] *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir.1997)).

[24] *Fleming v. Uphoff*, 2000 WL 374295, at *2 (10th Cir. 2000) (citation omitted).

[25] *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citing *Oxendine,* 241 F.3d at 1278).

wrote that "JUST TODAY, MEDICAL INFORMED ME THAT THEY HAVE UPPED MY DOSAGE."

Plaintiff complains has not seen Major Walker since April 2021, but this is because that officer retired from active military service at that time.  Plaintiff is now under the treatment of Mark A. Lawson, PA, and Dr. Llado-Frazier.  The evidence shows that Plaintiff continued to receive updates on his medical needs, and was scheduled for an appointment in early 2022. As a result, Plaintiff has failed to demonstrate any objective or subjective deprivation of access to medical care.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 28th day of March, 2022.

This closes the case.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE